IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ROGER WATTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:24-cv-02280-TLP-atc |
| v. ) | |
| ) | JURY DEMAND |
| JUVENILE DEFENDER'S OFFICE, ) | |
| MAYOR LEE HARRIS, and SHELBY ) | |
| COUNTY GOVERNMENT, ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING MOTION TO DISMISS**

Plaintiff Roger Watts sued Defendants Juvenile Defender's Office, Mayor Lee Harris, and the Shelby County Government for sex-based employment discrimination and retaliation. (ECF Nos. 1, 22.) Plaintiff seeks reinstatement to his commission, back pay, and compensatory damages. (ECF. No. 22 at PageID 78.) Defendants have moved to dismiss the case for failure to state a claim. (ECF No. 29.) Plaintiff opposes the motion. (ECF No. 34.) For the reasons explained below, the Court **DENIES** the Motion to Dismiss.

**BACKGROUND**

Plaintiff has a long history working for Shelby County.[1]  In August 2004, he began working for Shelby County as a deputy clerk in the Shelby County Criminal Court Clerk's Office. (ECF No. 22 at PageID 70.) Some years later, Plaintiff became a bailiff in Juvenile Court, where he was "responsible for the security in the courtroom and the safety of all

---

[1] For a motion to dismiss, the Court must accept as true Plaintiff's factual allegations. So the bulk of the background discussion of the facts comes from Plaintiff's allegations.

1

participants involved in court proceedings." (*Id.* at PageID 70–71.)  And in 2007, Plaintiff began working as a Legal Investigator with the District Attorney's Office for the Thirtieth Judicial District at Memphis.  (*Id.* at PageID 71.)  The next year, he became the sole Legal Investigator for the Juvenile Court of Shelby County.  (*Id.* at PageID 71–72.)

During his time working for Shelby County Government, Tennessee began requiring employees with Special Deputy Commissions to meet the same standards that the Peace Officer Standard Commission has for police officers.[2]  (ECF No. 34 at PageID 111.)  This meant that employees, like Plaintiff, had to attend Peace Officer Standard Training ("POST") and become POST-certified.  Plaintiff received his POST certification in 2011.  (ECF No. 22 at PageID 74.)  Years later, in 2019, "the Shelby County Mayor took over the Juvenile Defenders Office" where Plaintiff worked.[3]  (*Id.*)

---

[2] Neither party clearly explains the gist of this requirement.  Plaintiff alleges that "[o]n September 11, 2008, Tennessee P.O.S.T., under the authority of Tennessee State Law, instituted a requirement that all individuals holding Special Deputy Commissions meet the same requirements as full time P.O.S.T. certified Police Officers . . . . The above policy applied to Plaintiff and Rochelle Cooper, Special Deputies Commissioned in their job capacities with Shelby County Government."  (ECF No. 22 at PageID 72.)  The record fails to clarify the requirement.  Under Tennessee law, sheriffs may appoint special deputies when they think "proper," and sheriffs may "enter into agreements with other law enforcement agencies . . . for the exchange of law enforcement officers when required for a particular purpose."  Tenn. Code Ann. § 8-8-212.  These exchanged law enforcement officers "shall not be deemed to be special deputies."  *Id.*  There is no legislative history for this statute, and the text does not address the requirements for those holding Special Deputy Commissions.  Special Deputy Commission requirements are enumerated in the Rules of The Tennessee Peace Officer Standards and Training Commission Chapter 1110-02, but there is no legislative history showing that any requirements became enforceable in September 2008.  The Amended Complaint cites "Policy No. 103.06(B)," but it is unclear who publishes the policy.  (ECF No. 22 at PageID 72.)  And knowing who issued the policy, and to whom it applies, may clarify whether Plaintiff and Cooper share an employer and whether their positions required "substantial equality of skill, effort, responsibility, and working conditions."  *See Thomas v. Owen Elec. Coop., Inc.*, 121 F. App'x 598, 603 (6th Cir. 2005) (citations omitted).

[3] In 2018, the Department of Justice ("DOJ") issued a report on whether the Juvenile Courts of Memphis and Shelby County complied with a Memorandum of Agreement between them and the Civil Rights Division of the DOJ.  Sarah Macaraeg, *Final DOJ Report: 'Blatantly Unfair'*

2

In 2022, Plaintiff asked for a pay raise and promotion. And he met many times with the "deputy chief administrator" to discuss his request. (ECF No. 22 at PageID 70–71.) As part of his request, he explained that Rochelle Cooper worked as a Legal Investigator at the District Attorney's Office. (*Id.* at PageID 74.) Unlike Plaintiff, after Cooper received her POST certification, she received a pay increase. (*Id.*) Cooper was also reclassified as a "Criminal Investigator," but Plaintiff's title remained the same. (*Id.*) Plaintiff also believed that he and Cooper were "performing the same or similar duties."[4] (ECF No. 22 at PageID 74.) According to Plaintiff, the main difference is that Cooper is female, and Plaintiff is male, though he also alleges that he has more "education, certification, and military investigative training" than Cooper. (*Id.* at PageID 70–71.)

---

*Practices Persist at Shelby County Juvenile Court*, COMMERCIAL APPEAL (Dec. 11, 2018) https://www.commercialappeal.com/story/news/2018/12/10/shelby-county-juvenile-court-federal-oversight-doj-report/2266028002/. The DOJ found that Shelby County was "non-compliant in creating an independent conflict attorney panel" to give children involved in the juvenile justice system counsel independent from the "direct control of a juvenile court judge." *Id.* To mitigate the DOJ's concerns, the Mayor of Shelby County announced that the Mayor's office, rather than staff at Juvenile Court, would select counsel for "delinquent youth" whose cases posed a conflict with the Public Defender's Office. It appears that the office was part of the Shelby County government. Katherine Burgess, *How Shelby County Plans to Solve Juvenile Court Conflict of Interest Highlighted in DOJ Report*, COMMERCIAL APPEAL (Jan. 8, 2019) https://www.commercialappeal.com/story/news/2019/01/08/shelby-county-juvenile-court-attorneys-doj-report/2511999002/. That said, it is unclear whether, or how, restructuring the Juvenile Defenders Office impacted Plaintiff's employment

[4] In the original Complaint, Plaintiff alleged he asked for pay increases in 2019 and 2022. (ECF No. 1 at PageID 6.) But in the Amended Complaint, Plaintiff only references the 2022 request. (ECF No. 22 at PageID 74.) Defendants only mention the 2019 request in their Motion to Dismiss. (ECF No. 29-1 at PageID 96.) In any case, the statute of limitations for Equal Pay Act claims run two years after the last discriminatory paycheck, so the date of the request is not dispositive of any issue here. *See Gandy v. Sullivan County*, 24 F.3d 861, 864 (6th Cir. 1994) (explaining that under the "continuing violation" doctrine, the Equal Pay Act is violated "each time an employer presents an 'unequal' paycheck to an employee for equal work"). In this case, Shelby County last paid Plaintiff in 2023 or 2024, and he sued in September 2024. (ECF No. 22 at PageID 76.)

Plaintiff alleges that during the meetings with the deputy chief administrator, Defendants showed him the salaries of other Shelby County Legal Investigators but declined to show him the salary of Cooper and other Criminal Investigators. (*Id.*) In the end, Shelby County denied the pay increase but changed the title on Plaintiff's door to "Criminal Investigator." (*Id.* at PageID 74–75.)

After the meetings, Plaintiff brought a discrimination complaint before the Shelby County Equal Opportunity Compliance Office ("EOC"). (ECF No. 22 at PageID 75.) Plaintiff charged that his and Cooper's positions entailed similar duties and requirements and that only she got a pay raise. For all that, Plaintiff alleged he was a victim of gender discrimination. (ECF No. 22 at PageID 75.) Plaintiff alleges that "immediately" upon filing the EOC complaint, Defendants retaliated by questioning "the validity of Plaintiff's commission"; depriving him of his "firearms, bulletproof vest, shirts with badges, holster, and all gear associated with being a commissioned officer"; denying him access to the training to retain his certification; and cancelling his Special Deputy Commission. (*Id.* at PageID 75–76.)

Plaintiff then sued here, alleging violations of the Equal Pay Act and Title VII. (*Id.* at 76–77; *see also* ECF No. 1.) Defendants moved to dismiss the Complaint, arguing that Plaintiff failed to allege that he and Cooper shared an employer, received different pay, and performed similar duties. (ECF No. 14.) Plaintiff then amended the Complaint under Rule 15.[5] (ECF No. 17.) And Defendant moved to dismiss the Amended Complaint. (ECF No. 29.) Plaintiff opposes the motion. (ECF No. 34.) The Court considers the renewed Motion to Dismiss here.

---

[5] The Court granted Plaintiff through September 19, 2024, to amend. (ECF No. 21.) But he did not do so until four days after the Court's deadline (ECF No. 22), so Defendant moved to strike (ECF No. 23). The Court denied the motion to strike but imposed sanctions. (ECF No. 30.) Plaintiff then amended, so the Court denied the initial Motion to Dismiss as moot. (ECF No. 27.)

4

## **LEGAL STANDARD**

For a 12(b)(6) motion to dismiss, courts apply the standards for Federal Rules of Civil Procedure 8 and 12(b)(6) as set out in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007).  Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," thus giving the defendant "fair notice of what the claim is." *Twombly*, 550 U.S. at 555 (citation omitted).  But the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of a cause of action's elements." *Id.*  Simply put, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is "plausible" when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A court also must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wamer v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022), *cert denied*, 143 S.Ct. 444 (2022) (citation omitted).  But it need not accept "legal conclusions or unwarranted factual inferences." *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021) (quoting *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017)).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not enough. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *Arsan v. Keller*, 784 F. App'x 900, 909 (6th Cir. 2019) (quoting *Commercial Money Ctr. v. Ill. Union Ins.*, 508 F.3d 327, 336 (6th Cir. 2007)).

Lastly, when reviewing a motion to dismiss, the court generally restricts its review to the facts of the complaint. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022).  Still,

"a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 410 (6th Cir. 2024).

## ANALYSIS

Plaintiff alleges that Defendants paid him differently based on his gender in violation of the Equal Pay Act and that they committed gender discrimination and retaliation under Title VII. The Court discusses each claim below.

**I.     Equal Pay Act Claim**

The Equal Pay Act protects employees from gender and race-based employment discrimination and prohibits employers from engaging in wage discrimination. 29 U.S.C. § 206(d); *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 507 (6th Cir. 2021). And courts analyze Equal Pay Act claims under the *McDonnell Douglas* burden-shifting framework. *Schleicher*, 831 F.3d at 752. Under *McDonnell Douglas*, a plaintiff must allege a prima facie case of wage discrimination: "an employer pays different wages to employees of different sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Schleicher v. Preferred Solutions, Inc.*, 831 F.3d 746, 752 (6th Cir. 2016) (quoting *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006)). If the plaintiff successfully alleges the prima facie case, the defendant then carries the burden to show the disparity is nondiscriminatory under the statutory exceptions for "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29

U.S.C.S. § 206(d)(1); *see Schleicher*, 831 F.3d at 752.  If the defendant does so, the plaintiff must show the reason is pretextual.  *Schleicher*, 831 F.3d at 752.

Because Defendants have not raised affirmative defenses under *McDonnell Douglas* and contest only that Plaintiff alleged the prima facie elements of an Equal Pay Act claim, this Court focuses its analysis on this first step.[6]  For the reasons explained below, the Court finds Plaintiff has plausibly alleged a violation of the Equal Pay Act.

### A.     Same Employer

The Parties first dispute whether Plaintiff can show that "an *employer* pays different wages."  *Principi*, 441 at 359 (emphasis added).  Defendants argue that "Ms. Rochelle Cooper is not– and cannot be– Plaintiff's comparator for the purposes of his Equal Pay Act claim for one simple reason: Ms. Rochelle Cooper is not employed or paid by the County."  (ECF No. 29-1 at PageID 99.)  Defendants explain that Plaintiff's "comparator is a Criminal Investigator for the District Attorney's Office," which is part of the state government, and not the County.  (*Id.*)  But Defendants concede in the next paragraph that "some County employees work for the District Attorney's Office."  (*Id.*)

Although the Court tends to think the County would know who its employees are, Defendants do not show that all Criminal Investigators for the District Attorney's Office are not County employees.  Rather, they cite a fragment of the Tennessee Code explaining that "each judicial district shall constitute a district attorney general's district."  (*Id.* (citing Tenn. Code

---

[6] In any case, a plaintiff need not anticipate a defendant's defenses or plead pretext at the pleading stage.  See *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (holding that, because the *McDonnell Douglas* prima facie case is "an evidentiary standard, not a pleading requirement," parties need not account for the later steps of *McDonnell Douglas*.).

Ann. § 8-7-101).) But neither that code nor the Court's review of the public record clarifies who hires criminal investigators for the District Attorney's Office.

That said, Plaintiff contends that he and Cooper "were, during relevant periods, employees of the Shelby County Government." (ECF No. 22 at PageID 71.) And Defendants do not show that this allegation is untrue with evidence the Court can consider on a motion to dismiss, such as by citing relevant statutes, documents in the public record, or public employment records. So, accepting Plaintiff's allegations as true and making reasonable inferences in his favor, the Court finds that he has plausibly alleged that he and Cooper were both employees of Shelby County.[7] *See Wamer*, 27 F.4th at 466.

### B.    Different Wages to Opposite Sexes

Defendants also dispute whether the County paid "*different* wages to employees of opposite sexes." *Principi*, 441 at 359 (emphasis added). They argue that Plaintiff does not allege what he and Cooper earned as salaries and instead asks "the Court to infer from [Cooper's pay increase] that the comparator receives more compensation from the County." (ECF No. 29-1 at PageID 100.) This argument fails for two reasons.

First, Plaintiff alleges that his pay was less than Cooper's. (ECF No. 22 at PageID 75 ("Defendant tried to justify Plaintiff's *lower* pay by providing him with a flow chart showing the salaries of Shelby County Legal Investigators." (emphasis added)).) Second, even if he did not state it expressly, Plaintiff alleges that he "requested a pay increase because his salary was not commensurate with Criminal Investigator Rochelle Cooper," implying that his pay was less than hers. (ECF No. 22 at PageID 74.) This is enough to survive a motion to dismiss. *See Dennis v.*

---

[7] To be clear, the Court is not finding that the Parties shared an employer. The County may still move for summary judgment, assuming it has admissible evidence supporting its position.

8

*G4S Secure Sols. (USA), Inc.*, No. 1:20-cv-46, 2020 U.S. Dist. Lexis 79211 at *8–9 (E.D. Tenn. May 6, 2020) (not requiring numerical data to show pay disparity); *Ross v. Path Master, Inc.*, No. 5:22-cv-00871, 2023 U.S. Dist. LEXIS 41980 at *11 (N.D. Ohio Mar. 13, 2023) (not dismissing an Equal Pay Act claim when the plaintiff plead that "[a] Caucasian male received a higher pay than the plaintiff"); *Galligan v. Detroit Free Press*, 293 F.Supp. 3d 707, 713 (E.D. Mich 2018) (ruling that an Equal Pay Act claim could proceed because it "assert[ed] . . . that Plaintiffs have been paid less than their similarly situated male counterparts for the same work"). And so, viewing these allegations in the light most favorable to the nonmoving party, Plaintiff has alleged plausibly that he and Cooper earned "different wages."

### C. Equal Work on Jobs Requiring Equal Skill, Effort, and Responsibility and Performed under Similar Working Conditions

Finally, a plaintiff must allege that an employer paid him and his comparator differently for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Principi*, 441 F.3d at 359. Defendants claim that Plaintiff failed to meet this burden because he "cannot show that there were similar requirements as to 'skill, effort, responsibility, and working conditions.'" (ECF No. 29-1 at PageID 101 (emphasis omitted).) After all, they worked for different employers with "opposing" goals. (*Id.*) Plaintiff disagrees, arguing that he and Cooper worked for the same employer in similar positions. (ECF No. 34 at PageID 110.)

To determine whether jobs are substantially equal, courts conduct an "overall comparison of the work, not its individual segments." *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981); *see also, e.g.*, *Brennan v. Owensboro-Daviess Cnty. Hosp.*, 523 F.2d 1013 (6th Cir. 1975) (holding that despite some differences, the jobs of orderlies and nurses were substantially similar, and allowing the claim for wage discrimination to proceed); *Buntin v. Breathitt Bd. Of*

9

*Educ.*, 134 F.3d 796, 799 (6th Cir. 1998) (holding that the plaintiff's testimony that she "was required to perform all of the duties previously assigned to her predecessor" met the prima facie burden).  Further, job titles and classifications are not dispositive.  *Conti v. Universal Enters.*, 50 F. App'x 690, 696 (6th Cir. 2002).  And "precise equivalence is not required."  *Id.*  Put another way, differences in job duties do not mean that there is not "substantial equality" in the positions.  *Thomas v. Owen Elec. Coop., Inc.*, 121 F. App'x 598, 603 (6th Cir. 2005); *Brennan*, 523 F.2d at 1025 (6th Cir. 1975) ("Accordingly, this duty does not significantly distinguish the job of aides and orderlies, and does not justify higher wages for orderlies.").

To this point, Plaintiff outlines similar responsibilities for Cooper's Criminal Investigator position and his Legal Investigator position with the Juvenile Courts.  For example, both roles are responsible for witness interviews.  (ECF No. 22 at PageID 72–73, 75 (alleging that he "interview[ed] defense and prosecuting witnesses" and that Cooper "conduct[ed] interviews" and "obtain[ed] statements from defendants and witnesses").)  And both conducted investigations.  (*Id.* at PageID 72–73 (noting that Plaintiff had to "conduct complex investigations" and apply "investigative techniques," whereas Cooper needed to have "extensive knowledge of the law, investigative techniques, and court proceedings").)  Plaintiff had to be "familiar[] with court proceedings," just as Cooper needed "extensive knowledge" of "court proceedings."  (*Id.*)  They are both responsible for evaluating evidence: Plaintiff "analyze[d] case factors," and Cooper "evaluate[d] case details, and photograph[ed] crime scenes."  (*Id.* at PageID 73, 75.)  And as Plaintiff points out several times, they both needed to be POST-certified.  (*Id.* at PageID 76.)

The main difference between Plaintiff's and Cooper's position seems to be that Cooper "ma[de] arrests and serve[d] court orders."  (*Id.* at PageID 75.)  In the overall comparison of their jobs, making arrests may be a significant difference.  But because Plaintiff's and Cooper's jobs

10

need not be "precise[ly] equivalen[t]," *see Conti*, 50 F. App'x at 696, the Court finds that Plaintiff has plausibly alleged their roles were "substantial[ly] equal[]," *see Thomas*, 121 F. App'x at 603. *See also Brennan*, 523 F.2d at 1025 (6th Cir. 1975) ("Accordingly, this duty does not significantly distinguish the job of aides and orderlies, and does not justify higher wages for orderlies.").

Viewing the facts in the light most favorable to Plaintiff and making all reasonable inferences in his favor, the Court finds Plaintiff has pleaded a claim under the Equal Pay Act. The Court therefore **DENIES** Defendants' motion to dismiss this claim.

## II.     Title VII Claims

Title VII of the Civil Rights Act protects employees from discrimination and retaliation at work. Plaintiff alleges that Defendants violated Title VII by discriminating against him based on his gender and then retaliating against him for reporting that discrimination—an alleged protected activity. (ECF No. 22 at PageID 76–77 ("The Defendant's actions constitute unlawful sex/gender discrimination, violating the Civil Rights Act of Title VII."); *id.* ("Defendants' conduct against Plaintiff was in retaliation for his known engagement in protected activity against Defendant's discriminatory conduct.").)

### A.     Discrimination Claim

Title VII "prohibits 'discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin." *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 508 (6th Cir. 2021) (quoting 42 U.S.C. § 2000e-2(a)(1)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973). To survive a motion to dismiss, the plaintiff must allege that "(1) that he is a member of a protected class, (2) that he was subject to an adverse employment decision, (3) that

he was qualified for the position, and (4) that he was treated differently than a similarly situated individual outside the protected class." *Vickers v. Fairchild Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006).

Plaintiff has plausibly alleged each element of a Title VII discrimination claim. Under the first element, Plaintiff alleges that he is a man. (ECF No. 22 at PageID 77.) Title VII prohibits discrimination based on sex, so Plaintiff has alleged that he belongs to a protected class.[8]

Under the second element, Plaintiff plausibly alleges that Defendants subjected him to an adverse employment action. Receiving lower pay than another employee is an adverse action. *See Woods v. FacilitySource, LLC*, 640 F. App'x 478 (6th Cir. 2016); *Brown v. Wormuth*, Civil Action No. 3:21-CV-037-CHB, 2022 U.S. Dist. LEXIS 172043 at *14 (W.D. Ky. Sep. 22, 2022) (holding that pay disparities are a form of adverse employment action). And as discussed above, Plaintiff alleges that he received less pay than Cooper. (ECF No. 22 at PageID 75.)

The third element requires the plaintiff to be qualified for the position. Plaintiff alleges that he was qualified for the position he held, and neither Party contests that. (*Id.* at PageID 71.) Plus, because he had been POST-certified before, the Court, resolving reasonable inferences in Plaintiff's favor, assumes he still would have been eligible for the required certification had he been allowed to take the training. (*See id.* at PageID 76.) So this element is met.

Finally, a plaintiff must show "that he was treated differently than a similarly situated individual outside the protected class." *Vickers*, 453 F.3d at 762. Plaintiff alleges that he was

---

[8] Male plaintiffs alleging sex discrimination need not prove their claim any differently than female plaintiffs. *See Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540 (2025) (explaining that male plaintiffs in Title VII cases need not show "background circumstances" that the employer discriminates against "majority groups").

treated differently than Cooper. As discussed above, Cooper is a "similarly situated" colleague with similar job duties, titles, and requirements. (*Id.* at PageID 74.) He has also alleged that Defendants treated him differently from Cooper because, after becoming POST-certified, she received a pay raise that he did not. (*Id.*) And he claims that Cooper is female, so she falls outside Plaintiff's protected class. (*Id.* at PageID 75.)

In response, Defendants argue that Plaintiff does not show an intent to discriminate or that he earned less "because of" his sex. (ECF No. 29-1 at PageID 102.) After all, Plaintiff does not allege that Defendants made disparaging statements, only hired women for some jobs, or generally behaved discriminatorily toward male employees. But intent and causation are not elements of a prima facie discrimination case, so Plaintiff need not plead them. *See, e.g.*, *Briggs*, 11 F.4th at 508. And even if they were elements, the Sixth Circuit holds that Title VII and Equal Pay Act Claims travel together, so alleging an Equal Pay Act claim is also enough for Plaintiff's Title VII discrimination claim to survive. *See Korte v. Diemer*, 909 F.2d 954, 959 (6th Cir. 1990) ("We find the distinction drawn by the district court between Equal Pay Act liability and Title VII liability overly technical. A finding of 'sex discrimination in compensation' under one Act is tantamount to a finding of 'pay discrimination on the basis of sex' under the other."); *see also Buntin v. Breathitt Cnty. Bd. Of Educ.*, 134 F.3d 796, 801 (6th Cir. 1998) ("This Circuit has previously held that a finding of liability under the Equal Pay Act requires a similar finding of liability under Title VII where both claims present the same conduct and evidence.").

For the reasons explained above, the Court finds that Plaintiff has alleged a Title VII sex discrimination claim. The Court therefore **DENIES** the Motion to Dismiss.

### B.	Retaliation Claim

Finally, Plaintiff alleges Defendants retaliated against him for reporting employment discrimination by revoking his access to the POST certification training and by cancelling his commission. (ECF No. 22 at PageID 76.) To allege a claim of unlawful retaliation, a plaintiff must show that "(1) he engaged in protected activity; (2) defendants knew he exercised his protected right; (3) defendants subsequently took an adverse employment action against him; and (4) his protected activity was the but-for cause of the adverse employment action." *Boshaw v. Midland Brewing Co.*, 32 F.4th 598, 605 (6th Cir. 2022) (quotation marks omitted); *see also* 42 U.S.C. § 2000e-2(a).

There is no dispute that Plaintiff engaged in a protected activity here. Filing internal or administrative complaints about unlawful discrimination is a protected activity. *See Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 569 (6th Cir. 2019); *Townsend v. Rockwell Automation, Inc.*, 852 F. App'x 1011, 1016 (6th Cir. 2021) ("Protected activities include filing an EEOC charge and opposing discriminatory practices by making complaints to management."); *Trujillo v. Henniges Auto. Sealing Sys. N. Am., Inc.,* 495 F. App'x 651, 655 (6th Cir. 2012) ("We have repeatedly held that complaints to human resources personnel regarding potential violations of Title VII constitute protected activity for purposes of establishing a prima facie case of retaliation."). And Plaintiff reported the alleged discrimination to Shelby County's EOC, thereby engaging in protected activity.

For the second element of retaliation, the employer must know of the protected activity. Plaintiff has plausibly alleged that Shelby County knew of his protected activity for two reasons. First, Plaintiff alleges that his protected activity was making an "internal complaint" about alleged discrimination, which he reported directly to Shelby County. (ECF No. 22 at PageID

14

75.) Second, Defendants conducted a series of meetings with Plaintiff to discuss his request for a raise and the allegedly disparate treatment. (*Id.*) Viewing these allegations in favor of Plaintiff, the Court finds that he has plausibly alleged that Defendants knew of his protected activity here.

To prove the third element, a plaintiff must show that he suffered an adverse employment action. An adverse employment action causes a "materially adverse change in the terms and conditions of [plaintiff's] employment." *Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004). This includes "firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus v. Ellerth*, 524 U.S. 742, 761 (1998). And when determining whether something is materially adverse, courts may look at "other indices that might be unique to a particular situation." *Townsend*, 852 F. App'x at 1015. Plaintiff alleges "materially adverse" consequences here. To be sure, Plaintiff does not allege that Defendants fired him, but he asserts that they deprived him of his commission, firearms, and badge before denying him reentry to training and assigning him lesser duties. (ECF No. 22 at PageID 76.) In essence, Plaintiff claims that Defendants demoted, reassigned, and deprived him of the "terms and conditions" of his former position, plausibly meeting the third element for retaliation. *See Smith*, 378 F.3d at 575.

Finally, the plaintiff must allege a causal connection between the protected activity and the adverse employment outcome. Plaintiff shows this connection here by asserting that "immediately" after filing the protected complaint with the EOC, Defendants began imposing adverse actions on him. (*Id.*) While this claim lacks specificity in its timeline, it is plausible enough to survive a motion to dismiss.

Because Plaintiff has alleged each of the elements of the Title VII retaliation claim, the Court **DENIES** the Motion to Dismiss.

15

## **CONCLUSION**

For the reasons explained, the Court **DENIES** the Motion to Dismiss.

**SO ORDERED**, this 14th day of July, 2025.

                                  s/Thomas L. Parker
                                  THOMAS L. PARKER
                                  UNITED STATES DISTRICT JUDGE